**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**ELLIOT GLASSMAN,**

                          Plaintiff,

     v.

**WSP USA INC.**

                        Defendant.
-------------------------------------------------------------X

Case No.: 1:24-cv-04667
Date Filed: 6/19/2024

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff Elliot Glassman ("Plaintiff") and proffers this Complaint for damages against Defendant WSP USA Inc.

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.*; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §290 *et seq.*; New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §8-101 *et seq*.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

3. This Court has supplemental jurisdiction over this controversy under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a), as they are so related in this action within such original federal question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendant is located in the Southern District of New York, Defendant

conducts substantial business in this judicial District, and it is where the acts and/or omissions giving rise to the claims alleged herein occurred.

5. Defendant has willfully engaged in violations of the ADA, NYSHRL and NYCHRL by: discriminating against Plaintiff based on his disability, perceived disability, and/or record of disability; retaliating and discriminating against Plaintiff for engaging in protected activity; subjecting Plaintiff to the hostile work environment and less favorable treatment based on his disability, perceived disability, and/or record of disability and/or engaging in protected activity.

## THE PARTIES

6. Plaintiff Elliot Glassman is an individual residing in Stamford, Connecticut.

7. Defendant is a corporation with multiple locations, including one in New York, New York. Plaintiff worked at Defendant's New York location.

8. Plaintiff is an employee as defined by the ADA, NYSHRL, and NYCHRL.

9. Defendant is an employer as defined by the ADA, NYSHRL, and NYCHRL.

## STATEMENT OF FACTS

10. Plaintiff began employment with Defendant in or around August 2012.

11. Plaintiff worked in the Defendant's New York Office.

12. At the time of his termination, Plaintiff was employed in the position of Assistant Vice President and Senior Technical Principal of the WSP Built Ecology team.

13. In his role, Plaintiff was responsible for acting as a design leader for projects with sustainability aspirations, project management, working directly with clients to articulate and achieve project goals, developing work plans, directing and managing multiple direct reports across a national team, assisting the design process, delivering simulation-validated design

guidance, leading knowledge sharing and training for sustainable design concepts and computational design workflows, developing computational design analytics strategy and a suite of parametric tools for analysis and optimization.

14. Plaintiff was an excellent employee. Due to his dedication and excellent work performance, he was consistently promoted every one or two years. Plaintiff was elected to become a charter member and lead of WSPnext. Plaintiff was awarded with the honorary designation of Senior Technical Principal for two areas of expertise: Daylight Design and Computational Design.

15. Plaintiff made major contributions to Defendant, including developing and integrating innovative tools and solutions, bringing new clients and projects, winning awards, holding conferences, and hosting events.

16. Plaintiff reported to Narada Golden and Emir Pekdemir.

17. Plaintiff is an individual with a disability as defined under the ADA and New York law. In December 2022, Plaintiff was diagnosed with colon cancer, which required surgery and another treatment. Plaintiff's physical impairment caused associated mental impairments.

18. On or about December 6, 2022, Plaintiff emailed Mr. Golden and Mr. Pekdemir, informing them that he will need to have surgery on December 28, 2022, and will be in the hospital for 3-5 days. Plaintiff informed that the doctor recommends taking two weeks off afterward and that it may take a few months to recover fully, but he will continue to work. Mr. Pekdemir replied to the Plaintiff that he had no issues and wished him a speedy and complete recovery. Mr. Golden did not reply to Plaintiff's email.

19. On or about December 27, 2022, Plaintiff emailed Mr. Golden and Mr. Pekdemir to inform them that his surgery was pushed off until January 3, 2023, and that he adjusted his time off in the team calendars. Mr. Golden did not reply to Plaintiff's email.

20. On January 3, 2023, Plaintiff underwent a sigmoid colectomy to remove the malignant growth on his colon and had 4.2 cm of his colon removed.

21. On January 16, 2023, Plaintiff returned to work without fully recovering. Plaintiff had to work while suffering from the loss of voice, a side effect of his intubation that made his vocal cords unable to close.

22. On or about February 7, 2023, Plaintiff's oncologist determined that Plaintiff would need to have 6 months of chemotherapy to ensure that cancer does not return in the future.

23. On or about February 7, 2023, Plaintiff informed Mr. Golden and Mr. Pekdemir that he would need accommodations related to his impairments, including leave for medical appointments and treatment and not working as many hours over 40 per week during the treatment.

24. After February 7, 2023, Plaintiff noticed a slowing in his project work.

25. After February 7, 2023, other employees noticed a slowing in Plaintiff's project work.

26. After February 7, 2023, Plaintiff noticed he was being left off projects that matched his strengths and expertise.

27. After February 7, 2023, other employees noticed Plaintiff was being left off projects that matched his strengths and expertise.

28. In February 2023, Plaintiff used the time to work on strategic efforts as requested by Mr. Golden, such as documenting the computational design and daylight workflows for the playbook as a reference to other staff.

29. In February 2023, Plaintiff worked with his colleagues to package some innovations the team had developed for the NYCHA project.

30. In February 2023, Plaintiff spent hours advancing the Accel project work.

31. In February – March 2023, Plaintiff makes his colleagues, including Mr. Golden, aware of his availability for project work at Monday project staffing meetings.

32. In February – March 2023, Erika Duran, a project manager, suggested involving Plaintiff in the Marriott Project.

33. Mr. Golden demurred on the suggestion of involving Plaintiff in the Mariott Project.

34. On or about March 2023, Defendant implemented a new hybrid work model that required employees to be present in the office at least three days per week starting from April 2023.

35. On or about March 7, 2023, Mr. Golden informed other managers that he would like the team to plan as default on being in the office three days a week starting in April 2023. He asked managers to let him know about the staff that will not be able to start doing this in April, the reasons for this, and what their plan is to get to three days a week in the office.

36. In March 2023, Plaintiff informed Mr. Golden and Mr. Pekdemir that due to his recent surgery and ongoing chemotherapy, he was immunocompromised and had to minimize the risks to his health. Plaintiff informed them that he could be in the office once per week and, starting in Fall 2023, could be present in the office three days a week.

37. On or about March 10, 2023, Mr. Pekdemir emailed Mr. Golden that Plaintiff would limit his office commute to one day a week until September 2023. On the same day, Mr. Golden responded and thanked Mr. Pekdemir for the update and summary.

38. On or around the second half of March 2023, Mr. Golden scheduled a meeting with Plaintiff to discuss Plaintiff's low project utilization rate. Mr. Golden then canceled the meeting

and never rescheduled it. Plaintiff approached Mr. Golden on several occasions to reschedule the meeting.

39. In March 2023, Plaintiff renewed his work on projects he had been involved in, including Land Point of Entry and the Doha Embassy. Around the same time, Plaintiff took part in a meeting to plan to pursue the new project for the Canadian Housing Authority.

40. In March 2023, Plaintiff completed the BE toolbar, a secure way of accessing the tools he has developed over the years across Defendant's company.

41. On or about March 17, 2023, Plaintiff noticed that he was being blocked from many meetings as the team's technical leader and head of computational design lead. Mr. Golden was re-routing this work elsewhere.

42. Plaintiff reported this to Mr. Pekdemir. Mr. Pekdemir told Plaintiff to address this directly with Mr. Golden because reporting it to Human Resources would be futile.

43. On or about March 20, 2023, Plaintiff and Mr. Pekdemir met with Mr. Golden to address Plaintiff's exclusion from projects and work. During the meeting, Mr. Golden became agitated, defensive, and dismissive.

44. On or about March 24, 2023, Mr. Narada contacted Plaintiff to inform him that Plaintiff's position had been eliminated. Plaintiff was terminated the same day.

45. Plaintiff was offered seven weeks of severance pay contingent upon signing the separation agreement and release. Plaintiff's attorney reviewed the separation agreement and sent Defendant a letter concerning the severance package. Defendant refused to amend the severance offer or negotiate.

46. On or about December 21, 2023, Plaintiff submitted a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

47. In the charge, Plaintiff alleged that he was terminated because of his medical conditions, use of medical leave, and requests for medical accommodations, violating the ADA and other local, state, and federal laws.

48. On or about May 10, 2024, Plaintiff requested a Notice of Right to Sue because Defendant has been unresponsive in the EEOC process.

49. Plaintiff has exhausted his administrative remedies, and on May 16, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

## COUNT I
### (Disability Discrimination – ADA)

50. All of the preceding paragraphs are realleged as if fully rewritten herein.

51. Plaintiff suffers from oncology and side-effects of his treatment, including, but not limited to, surgery and chemotherapy.

52. Plaintiff suffers from mental health impairments associated with oncology and his cancer diagnosis.

53. At all times material herein, Plaintiff was disabled, regarded as being disabled, or had a record of being disabled as defined in 42 U.S.C. §12102.

54. Plaintiff is an otherwise qualified individual.

55. Defendant knew or had reason to know that Plaintiff suffered from one or more disabilities, and/or regarded him as disabled, and/or knew Plaintiff has a record of being disabled.

56. Defendant discriminated against Plaintiff based on his disability, perceived disability, and/or record of disability by taking the following non-exhaustive list of actions: terminating his employment, subjecting him to a hostile work environment, retaliating against him, and/or otherwise discriminating against him in the terms, privileges and conditions of employment.

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

58. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
### (Retaliation – ADA)

59. All of the preceding paragraphs are realleged as if fully rewritten herein.

60. The ADA prohibits employers from discriminating against any employee because the employee has opposed an unlawful employment practice under the ADA.

61. Plaintiff engaged in a protected activity when he opposed the hostile work environment, discouragement surrounding his leaves and treatment, and Defendant's discriminatory conduct toward Plaintiff.

62. Defendant knew Plaintiff engaged in these protected activities.

63. Defendant took an adverse employment action against Plaintiff by terminating his employment.

64. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

65. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
### (Hostile Work Environment – ADA)

66. All of the preceding paragraphs are realleged as if fully rewritten herein.

67. Defendant engaged in conduct that violates the ADA by subjecting Plaintiff to severe and pervasive harassment and/or creating a hostile work environment in the terms and conditions of his employment because of his disability, perceived disability, and/or record of disability.

68. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

69. Defendant knew or should have known of the harassment and did not take immediate and corrective action.

70. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

72. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## COUNT IV
### (Disability Discrimination – § 296 N.Y. Exec. Law)

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. At all times material herein, Plaintiff suffered from an impairment within the meaning of § 292 N.Y. Exec. Law.

75. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of § 292 N.Y. Exec. Law.

76. Defendant knew or had reason to know that Plaintiff suffered from one or more disabilities, regarded him as disabled, and/or knew Plaintiff has a record of being disabled.

77. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: terminating his employment, subjecting him to a hostile work environment, retaliating against him, and/or otherwise discriminating against him in the terms, privileges and conditions of employment.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

79. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT V
### (Retaliation – § 296 N.Y. Exec. Law)

80. All of the preceding paragraphs are realleged as if fully rewritten herein.

81. NYSHRL prohibits employers from discriminating against any employee because the employee has opposed an unlawful employment practice under the NYSHRL.

82. Plaintiff engaged in a protected activity when he opposed the hostile work environment and Defendant's discriminatory conduct toward Plaintiff.

83. Defendant knew Plaintiff engaged in these protected activities.

84. Defendant took an adverse employment action against Plaintiff by terminating his employment.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VI
### (Hostile Work Environment – § 296 N.Y. Exec. Law)

87. All of the preceding paragraphs are realleged as if fully rewritten herein.

88. Defendant engaged in conduct that violates the NYSHRL by subjecting Plaintiff to inferior terms, conditions, or privileges of employment because of his disability, perceived disability, and/or record of disability.

89. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

90. Defendant knew or should have known of the harassment and did not take immediate and corrective action.

91. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

92. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

93. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## COUNT VII
### (Disability Discrimination – § 8-107 N.Y. City Admin. Code)

94. All of the preceding paragraphs are realleged as if fully rewritten herein.

95. At all times material herein, Plaintiff suffered from an impairment within the meaning of § 8-102 N.Y. City Admin. Code.

96. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of § 8-102 N.Y. City Admin. Code.

97. Defendant knew or had reason to know that Plaintiff suffered from one or more disabilities, regarded him as disabled, and/or knew Plaintiff has a record of being disabled.

98. Defendant discriminated against Plaintiff because of his disability, perceived disability, or record of disability by taking the following non-exhaustive list of actions: terminating his employment, subjecting him to a hostile work environment, retaliating against him, and/or otherwise discriminating against him in the terms, privileges and conditions of employment.

99. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

100. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT VIII
### (Retaliation – § 8-107 N.Y. City Admin. Code)

101. All of the preceding paragraphs are realleged as if fully rewritten herein.

102. NYCHRL prohibits employers from discriminating against any employee because the employee has opposed an unlawful discriminatory practice under the NYCHRL.

103. Plaintiff engaged in a protected activity when he opposed the hostile work environment and Defendant's discriminatory conduct toward Plaintiff.

104. Defendant knew Plaintiff engaged in these protected activities.

105. Defendant took an adverse employment action against Plaintiff by terminating his employment.

106. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

107. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IX
### (Hostile Work Environment – § 8-107 N.Y. City Admin. Code)

108. All of the preceding paragraphs are realleged as if fully rewritten herein.

109. Defendant engaged in conduct that violates the NYCHRL by subjecting Plaintiff to less favorable treatment than other employees, harassment and/or creating of a hostile work environment in the terms and conditions of his employment because of his disability, perceived disability, and/or record of disability.

110. The less favorable treatment and harassing conduct were sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment.

111. Defendant knew or should have known of the less favorable treatment and harassment and did not take immediate and corrective action.

112. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities by Defendant.

113. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

114. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, front pay, statutory liquidated damages, expert witness fees, punitive damages, prejudgment and post-judgment interest, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Dated: New York, New York
June 19, 2024

Respectfully submitted,

*/s/Greg Mansell*
Greg R. Mansell
(*Greg@MansellLawLLC.com*)
**Mansell Law, LLC**
85 8th Ave., 6M
New York, NY 10011
Ph: (646) 921-8900
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Greg R. Mansell*

Greg R. Mansell (0085197)